IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KYLE JOSEPH SUTTON,

                Plaintiff,

      v.                       CASE NO.  12-3238-SAC-DJW

KANSAS DEPT. OF CORRECTIONS,
et al.,

               Defendants.

<u>MEMORANDUM AND ORDER</u>

Plaintiff, an inmate in the Kansas correctional system, has brought a <u>pro se</u> action under 42 U.S.C. § 1983 against numerous defendants.   The original complaint alleged § 1983 claims against Impact Design LLC ("ID") and the following officials of the company: Scott Skinner, Scott Bohnert, Chad Johnson, and Jesse Hodges.  ID is a private company which operates an apparel decorating plant at the Lansing Correctional Facility ("LCF"). The court issued an order directing plaintiff to show cause why the case should not be dismissed for failure to name a person acting under color of state law as a defendant.  Doc. No. 10. Plaintiff asked for leave to file an amended complaint which was granted.   This case is now before the court upon plaintiff's amended complaint which the court is obligated to screen pursuant to 28 U.S.C. § 1915A(a) and (b).

1

I. SCREENING STANDARDS

Part of the court's screening responsibility under the above-mentioned statute is to determine whether plaintiff's complaint "fails to state a claim upon which relief may be granted."  This requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court accepts the plaintiff's well-pled factual allegations as true and views them in the light most favorable to the plaintiff.  United States v. Smith, 561 F.3d 1090, 1098 (10th Cir.2009), cert. denied, 558 U.S. 1148 (2010).  The court may also consider the exhibits attached to the complaint.  Id.  The court, however, is not required to accept legal conclusions alleged in the complaint as true. Iqbal, 556 U.S. at 678. "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice" to state a claim.  Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Twombly, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "The plausibility standard

2

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  Id. (quoting Twombly, 550 U.S. at 557).

Plaintiff is proceeding pro se.  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992), cert. denied, 507 U.S. 940 (1993).  A district court should not "assume the role of advocate for the pro se litigant." Hall, supra. Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." Whitney v. State of New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

II. THE AMENDED COMPLAINT – Doc. No. 33.

The amended complaint, filed May 1, 2014, names as defendants the "ID defendants" named in the original complaint. The amended complaint also adds the Kansas Department of Corrections and the following state officers as defendants:  Ray Roberts, Secretary of Corrections; David McKune, Warden of LCF;

3

Brett Peterson, Policy and Compliance Manager; Chris Ross, Grievance Officer; COI Hensley; COI Noble; Unit Team Manager Alford; Nurse "Cindy" and an unnamed officer.  In this order, the court may refer to these defendants as "State defendants." Finally, plaintiff names "Correct Care Solutions" ("CCS"), a private health care provider at LCF, as a defendant in the amended complaint.[1]

Plaintiff claims that as an inmate-employee of ID's operation at LCF, he was exposed to a cleaning agent – "Safety-Kleen 105 Solvent Recycled" – which contains naphtha.  Plaintiff asserts that his exposure to the solvent without proper training or safety protections caused him to suffer severe headaches, nausea and vomiting.  Plaintiff asserts that various ID defendants and State defendants ignored or were indifferent to his complaints; that they refused or did not respond promptly to his requests for medical attention; and that they retaliated against him when he filed grievances or threatened to do so.

Plaintiff has labelled his claims in the amended complaint as:  1) deliberate indifference to hazardous conditions; 2) deliberate indifference to medical needs; and 3) retaliation for filing grievances.  He asserts that defendants' actions have

---

[1] "Nurse Cindy" may be an employee of CCS and not an employee of the State. The amended complaint is not clear on this point.  But, she will be treated as a state actor for the purposes § 1983 in this order.

violated his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution.

The following allegations taken from the amended complaint provide additional background to plaintiff's claims.  The court may refer to other allegations in the amended complaint or its exhibits within the court's analysis of various legal issues.

Plaintiff alleges that he worked for ID from May 18, 2010 to June 16, 2010 and from August 8, 2011 until September 16, 2011.  He alleges in general that he was exposed to and was forced to perform physical labor in a toxic, hazardous work environment without any chemical safety training.  Doc. 33, p. 6.[2]  Plaintiff asserts that on September 14, 2011 he informed defendant Johnson that his throat was bothering him because he was inhaling chemicals without a respirator.  Id. at 27. He alleges that he was required to continue working and that only after 30 minutes was Johnson able to find a "used, dusty, filthy respirator" for plaintiff to use.  Id. at 28.  Plaintiff asserts that, although Johnson promised that more respirators would be ordered, "plaintiff was forced to use the same respirator while suffering the same symptoms the next day."  Id.  Plaintiff contends that on September 16, 2011, plaintiff complained of the same severe headaches, nausea and vomiting to defendant Skinner and that Skinner refused to permit plaintiff to go to the prison

---

[2] The court is using the electronically assigned page numbers to the amended complaint and the exhibits to the amended complaint.

medical clinic.   Id. at 29.   He also alleges that September 16, 2011 was his last day on the job.

According to the amended complaint, defendant Skinner, contrary to ID policy (Id. at 30), put off plaintiff's requests for medical attention and told plaintiff that he would be sent to an outside doctor.   Id. at 29.   When this did not happen after three days, plaintiff decided on his own to go to the medical clinic on September 19, 2011.   Id.   He asserts that on September 19, 2011, he filed "his first series of health care requests . . . complaining of . . . headaches, nausea, and vomiting from chemicals at work."   Id. at 11.   Plaintiff contends he was not given treatment or evaluation and, instead, was sent back to defendant Skinner.   Id. at 29.   Plaintiff states that after 90 days he was still complaining of severe headaches due to chemical exposure and only received acetaminophen which was damaging to his liver because of plaintiff's history of hepatitis-C.   Id. at 12.   The exhibits to the amended complaint show that plaintiff submitted a health care request to CCS on September 19, 2011 and December 23, 2011. Doc. No. 33-1, p. 16.   Plaintiff was directed to take Tylenol in response to the December 23, 2011 request.   Id.

Plaintiff's other health care request forms that are attached as exhibits to his amended complaint are dated: July 9, 2012; July 11, 2012; July 13, 2012; December 2, 2012; February

28, 2013; February 9, 2013 (two forms); March 3, 2013; March 6, 2013 (complaining of anxiety and anger); August 22, 2013 (complaining of memory loss and anxiety); November 15, 2013 (asking that his prescription for acetaminophen be renewed for six months); February 7, 2014; and February 13, 2014.  Id. at 17-18, 73-74, 78, 83-85, and 175.

Plaintiff filed grievances regarding this matter.  One was filed on September 21, 2011 and another was filed in October. It was treated as duplicative.  Id. at 51.  One of the grievances was numbered AA20120265 and plaintiff alleges that he was retaliated against for filing that grievance.  Doc. No. 33, pp. 35-36.  He alleged in the grievances, among other matters, that he was not told of the dangers of inhaling Safety-Kleen or given safety training; that he had to work without a respirator or ventilation since August 8, 2011; and that his clothes were often saturated with Safety-Kleen.  Doc. No. 33-1, pp. 41-49.

The material safety data sheet ("MSDS") for Safety-Kleen describes it as a solvent used for cleaning.  Id. at 3-15. According to the MSDS, Safety-Kleen is a suspected cancer hazard.  It may be harmful if inhaled in high concentrations and may irritate the respiratory tract, eyes and skin.  High concentrations of vapor may also cause nausea, vomiting, headaches, dizziness, loss of coordination and numbness.  It should be handled in a well-ventilated area and contact with

eyes, skin, clothing and shoes should be avoided. Clothes and shoes saturated with Safety-Kleen should be cleaned or discarded. The use of respiratory equipment is recommended when the concentration of vapor or mist "exceeds applicable exposure limits." Id. at 8.

III. PLAINTIFF'S CLAIMS AGAINST THE ID DEFENDANTS MUST BE DISMISSED BECAUSE STATE ACTION IS NOT PLAUSIBLY ALLEGED.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988)(emphasis added). Here, the ID defendants are a private company and some of its officers. In these circumstances the court must decide whether the plaintiff has alleged sufficient facts to plausibly contend that the ID defendants' conduct is "fairly attributable to the state." Scott v. Hern, 216 F.3d 897, 906 (10th Cir. 2000)(interior quotations omitted).

The Tenth Circuit has applied four different analyses in determining whether to hold a private entity accountable as a state actor under § 1983: the nexus test; the public function test; the joint action test; and the symbiotic relationship test. Wittner v. Banner Health, 720 F.3d 770, 775 (10th Cir. 2013). The "nexus test" asks whether the challenged activity

8

results from the compulsion or coercion of the State.  Id.  The "public function test" asks whether the challenged action is a traditional and exclusive function of the State.  Id. at 776-777 (emphasis added).  The "joint action test" determines whether state officials and private parties have acted in concert to effect the alleged deprivation of federal rights.  Id. at 777. Finally, the symbiotic relationship test asks whether the State has so far insinuated itself into a position of interdependence with a private party that the State must be recognized as a joint participant in the challenged activity.  Id. at 777-78.

Plaintiff has not alleged facts in his amended complaint which describe a plausible claim that the ID defendants' actions were fairly attributable to the State under any of these tests. The facts alleged in the amended complaint indicate that the ID defendants, not the State, made the decision to assign plaintiff to a hazardous work area.  Plaintiff alleges that he was not trained to use Safety-Kleen and that Safety-Kleen was not used in accordance with MSDS precautions, contrary to State rules and regulations.  See Doc. No. 33-1, pp. 27-33 (KDOC policy and procedure governing control and use of hazardous materials). The facts alleged by plaintiff also indicate that any decision by an ID defendant to delay acting upon plaintiff's request for health care was made independently.  The same is true as regards the decision to remove plaintiff from the job.  Therefore, the

court finds that a plausible claim for state action under the nexus test is not described in plaintiff's complaint.

The amended complaint also does not describe a plausible claim for state action under the public function test.   The Tenth Circuit has said that this test is difficult to satisfy because "'[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State.'"   Id. at 777 (quoting Gallagher v. "Neil Young Freedom Concert," 49 F.3d 1142, 1456 (10th Cir. 1995) (interior quotations omitted)).   The court does not believe the operation of an employment system within a prison or for prison inmates has been an exclusive function of the State.   Many sources have discussed an extensive history of private entities operating labor systems within or in connection with state and federal prisons.   These sources include:   Patrice A. Fulcher, Emancipate the FLSA: Transform the Harsh Economic Reality of Working Inmates, 27 J. CIV.RTS. & ECON.DEV. 679, 685-97 (2015) and Noah D. Zatz, Working at the Boundaries of Markets:  Prison Labor and the Economic Dimension of Employment Relationships, 61 VAND.L.REV. 857, 869 (2008).   The court finds no plausible claim that ID was performing a traditional government function exclusively reserved to the State when it employed plaintiff or when it made day-to-day decisions regarding plaintiff's working conditions.   Nor does plaintiff allege that the ID defendants'

decisions as to working conditions or access to health care or tenure on the job were made under a contract to assume the State's penological responsibilities for the safety and security of inmates or to assume the State's obligation to provide adequate medical care.[3]   Therefore, the court concludes that the amended complaint does not state a plausible claim for state action under the public function test.

The court further finds that a plausible claim of state action under the joint action test is not described in the amended complaint.   Plaintiff alleges "joint action" in the amended complaint.   But, this is a label or conclusion which is not entitled to a presumption of truth.   As stated before, the joint action test asks whether state and private officials have acted in concert to deny federal rights.   Plaintiff does not allege facts showing that the ID defendants and the State acted in concert to require that plaintiff work in an unsafe environment, to delay or deny health care to plaintiff, or to remove plaintiff from his ID job.

The materials submitted with the amended complaint indicate that the State had safety rules and rules of conduct which ID

---

[3] This distinguishes this case from Smith v. Cochran, 339 F.3d 1205, 1213-14 (10th Cir. 2003) where Eighth Amendment obligations were applied to a state supervisor of a work release inmate and two cases cited by plaintiff, Phelps v. Dunn, 965 F.2d 93, 101-02 (6th Cir. 1992) and Payne v. Monroe County, 779 F.Supp. 1330, 1335 (S.D.Fla. 1991).   In Phelps, the court held that a voluntary chaplain acting pursuant to a prison's institutional structure to provide religious services to inmates was a state actor.   In Payne, the court held that allegations of "supervision and control" over a county jail were sufficient to allege state action by a private entity.

acknowledged and agreed to follow.  See ID handbook, Doc. No. 33-1, pp. 144-159.  As mentioned previously, these rules require, for instance, that hazardous materials be used in accordance with MSDS recommendations.  Id. at 30.  Plaintiff also alleges that inmates could be punished by the State, upon a report from ID defendants, for disobeying the instructions of ID supervisors.  Id. at 169-170.  The exhibits to the amended complaint also indicate that ID had rules and procedures which the State recognized but did not help originate.

These facts alleged by plaintiff do not indicate that ID and the State collaborated or worked in concert to assign plaintiff to a work station where he would be exposed to dangerous levels of toxic chemicals without adequate safety equipment or training, or to deny or delay plaintiff access to medical care, or to terminate plaintiff from his ID job. Indeed, plaintiff's allegations that ID violated state safety regulations tend to indicate that ID and the State did not share common goals.

Plaintiff alleges elsewhere in the amended complaint that the State defendants acquiesced in or ignored ID's alleged misconduct.  This also does not show "joint action" between ID and the State defendants.  Wittner, 720 F.3d at 777.  Here, a role beyond acquiescence is not plausibly described in the complaint.  It is also not sufficient to allege that state

officers observed the actions of ID defendants.  See Gallagher, 49 F.3d at 1450-51 (state officers' observation of alleged illegal pat-down searches by private security workers does not supply nexus to state action).

In sum, the alleged "joint action" of ID and the State to supplement work opportunities for inmates and perhaps advance rehabilitation under the general security and safety framework of the State prison fails to describe "joint action" in causing plaintiff's exposure to hazardous working conditions, or in the denial of medical care, or in the termination of plaintiff's ID job.  See id. at 1455 (state's broad authority over security at public concert center does not establish "joint action" with private company whose "pat-down" searches at a concert allegedly violated constitutional rights).

Finally, the amended complaint does not describe a symbiotic relationship between the State and the ID defendants with regard to plaintiff's employment.  Such a relationship may exist when "a public-private relationship . . . transcend[s] that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities." Wittner, 720 F.3d at 778.  This is not necessarily established even when there is "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions." Gallagher, 49 F.3d at 1451.  One may infer from the

facts alleged in the complaint that ID provides jobs for inmates and that the State provides inmates for those jobs. And one may reasonably infer that there is a contract which governs the relationship between defendant and the State.[4] As mentioned previously, the court accepts plaintiff's claim that the ID defendants have authority to assist in the process of inmate discipline. But, more is required to plausibly infer that the State is so entwined with defendant in the operation of the employment program that it was a joint participant in establishing the safety conditions of plaintiff's employment. There is no claim that the State was consulted or exercised any influence over the decisions governing plaintiff's exposure to Safety-Kleen aside from the promulgation of regulations generally governing the handling of any hazardous materials. Such general rules and regulations do not prove a sufficient nexus to state action in the absence of a specific causal connection, nor do they prove a symbiotic relationship. See id. at 1449-53. Finally, the ability of ID defendants to instigate discipline does not compel a finding of state action here because plaintiff's claims against the ID defendants do not arise from a disciplinary event initiated by ID or one of its officers. A greater association is required for a symbiotic relationship. Id. at 1453 (assistance in enforcing State

---

[4] A lease between ID and the State is described in Watkins v. McKune, 251 P.3d 673 (Kan.App., unpublished, 5/20/2011).

14

policies as well as other benefits conferred by lessee upon governmental lessor do not satisfy test for symbiotic relationship).

In sum, plaintiff's allegations fail to state a claim for relief under § 1983 against the ID defendants because plaintiff does not plausibly assert that the ID defendants' failure to limit plaintiff's exposure to Safety-Kleen or their delaying plaintiff's access to health care or any acts of retaliation by ID should be attributable to the State.

IV. MOST OF PLAINTIFF'S CLAIMS AGAINST THE STATE DEFENDANTS ARE UNTIMELY.

The court may dismiss a claim sua sponte under § 1915A(b) upon statute of limitations grounds when the defense is obvious from the face of the complaint and no further factual record is required to be developed. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.) cert. denied, 549 U.S. 1059 (2006). The limitations period for § 1983 actions arising in Kansas is two years. Jacobs v. Lyon County Detention Center, 371 Fed.Appx. 910, 912 (10th Cir. 3/31/2010)(drawing the period from the personal injury statute of limitations in Kansas in accordance with Wilson v. Garcia, 471 U.S. 261, 269 (1985)); Brown v. U.S.D. 501, 465 F.3d 1184, 1188 (10th Cir. 2006)(same). Plaintiff filed his original complaint on November 20, 2012. But, his amended complaint which added the State defendants was

15

filed on May 1, 2014.  Pursuant to FED.R.CIV.P. 15(c)(1)(c), an amendment bringing in a party relates back to the date of the original complaint only if the added party received notice of the action previously so that the party would not be prejudiced in defending on the merits and knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity.  These conditions are not met here.  Therefore, the § 1983 action in the amended complaint is subject to dismissal against all State defendants for claims arising before May 1, 2012.  See <u>Spicer v. New Image Intern., Inc.</u>, 447 F.Supp.2d 1226, 1233 (D.Kan. 2006); <u>In re Estate of Kout v. U.S.</u>, 241 F.Supp.2d 1183, 1191-92 (D.Kan. 2002).

Plaintiff asserts that after May 1, 2012 he was transferred to a different prison in retaliation for filing grievances and that his phone privileges were suspended for a time period that extended after May 1, 2012.[5]  Plaintiff's other claims against the State defendants under § 1983 are barred under the statute of limitations.

V.  THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE PERSONAL PARTICIPATION IN UNCONSTITUTIONAL CONDUCT BY MOST OF THE INDIVIDUAL STATE DEFENDANTS.

---

[5] As mentioned in the next section of this order, these claims are subject to dismissal because plaintiff has failed to assert that an individual State defendant personally participated in these alleged unconstitutional actions. In addition, as also mentioned later in this opinion, plaintiff has failed to plausibly allege facts demonstrating a retaliatory motive for these actions.

A plaintiff may not seek to impose liability upon a defendant merely because of that person's supervisory position or because he rejected a grievance or ignored a complaint. "[P]ersonal participation in the specific constitutional violation complained of is essential." Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011). The Tenth Circuit has held that the denial of grievances alone is insufficient to establish personal participation in alleged constitutional violations. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir.2009); Whitington v. Ortiz, 307 Fed. Appx. 179, 193 (10th Cir.2009); Larson v. Meek, 240 Fed.Appx. 777, 780 (10th Cir. 2007); see also; Allen v. Reynolds, 475 Fed.Appx. 280, 284 (10th Cir. 2012)(notice of dispute given to prison warden does not show his personal participation in unconstitutional conduct). Plaintiff's amended complaint alleges that defendants Roberts, McKune, Peterson, Ross and Alford are liable for hazardous work conditions and the denial of medical care because of their treatment of plaintiff's grievances. These claims should be dismissed.

Plaintiff also claims that defendants Roberts, McKune and Peterson are liable under § 1983 because they acquiesced in violations of or failed to enforce compliance with policies regarding the use and handling of hazardous materials. To properly allege the liability of these supervisor defendants,

plaintiff must describe an affirmative link between them and the alleged constitutional violation.  Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) cert. denied, 131 S.Ct. 2150 (2011). This requires allegations of:  a) a personal involvement in the violation; b) a sufficient causal connection between the supervisor's involvement and the constitutional violation; and c) a culpable state of mind.  Id.  "Personal involvement" can be alleged by stating that:  1) the supervisor personally participated in the alleged violation; 2) the supervisor exercised control or direction over the alleged illegal acts, or the supervisor's failure to supervise caused the alleged illegal acts; 3) the supervisor knew of the violation and acquiesced in its continuance; or 4) the supervisor promulgated, created, implemented or utilized a policy that caused the alleged deprivation of constitutional rights.  Id.  A "causal connection" is alleged by claiming that a supervisor defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of her constitutional rights.

Finally, a "culpable state of mind" is alleged by stating that the supervisor defendant acted knowingly or with deliberate indifference that a constitutional violation would occur.  Id. at 1196.  "Deliberate indifference" is the required state of mind for an Eighth Amendment violation.  Tafoya v. Salazar, 516

F.3d 912, 916 (10th Cir. 2008).  To be deliberately indifferent,
an official must be "aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference."  Farmer v. Brennan, 511
U.S. 825, 837 (1994).  "The official's knowledge of the risk
need not be knowledge of a substantial risk to a particular
inmate, or knowledge of the particular manner in which the
injury might occur."  Tafoya, 516 F.3d at 916.  "'It does not
matter whether the risk comes from a single source or multiple
sources, any more than it matters whether a prisoner faces an
excessive risk of assault for reasons personal to him or because
all prisoners in his situation face such a risk.'"  Id. (quoting
Gonzales v. Martinez, 403 F.3d 1179, 1187 (10th Cir. 2005)).  In
addition, the official must be aware of and fail to take
reasonable steps to alleviate that risk.  Id.  Actual knowledge
of a substantial risk of serious harm to a prisoner may be based
solely on circumstantial evidence, such as the obviousness of
the condition.  Id.

Plaintiff alleges: that the MSDS data sheet was available
to prison officials; that there were rules and regulations
concerning hazardous materials; that video monitoring provided
evidence of the risks plaintiff was facing; and that he never
signed a document certifying that he was trained to handle
hazardous materials, contrary to prison rules.  These

allegations do not plausibly assert that defendants Roberts, McKune and Peterson were aware of a substantial risk of serious harm to plaintiff or other similarly situated inmates from exposure to high concentrations of Safety-Kleen without proper safety equipment or training.   These allegations may suggest a sheer possibility that discovery could produce evidence of negligence with regard to working conditions, but they do not allege a plausible claim of indifference to a substantial risk of serious harm from working conditions and certainly not from the alleged denial of medical care. Cf. <u>Vega v. Davis</u>, 572 Fed.Appx. 611 (10th Cir. 7/22/2014)(dismissing claim against prison warden for deliberate indifference to suicidal inmate's serious medical needs upon findings that warden's general responsibility, his visit to the control unit where the inmate was incarcerated, his access to inmate records and other information, his power to authorize transfer of inmates to medical facilities, and his alleged failure to implement suicide prevention programs in spite of prior suicides at the facility, did not plausibly suggest that the warden knew enough to be deliberately indifferent to plaintiff's alleged mistreatment).

As for the remaining individual State defendants, plaintiff alleges that defendant Noble filed a retaliatory false disciplinary report alleging a positive urinalysis result and that defendant "Nurse Cindy" denied plaintiff access to medical

care.   Plaintiff  also  alleges  that  defendant  Hensley  and  the

"unnamed  defendant"  confined  plaintiff  in  the  hazardous  work

area.    These  are  the  only  viable  allegations  of  "personal

participation"  against  an  individual  State  defendant.

Therefore,  plaintiff's  §  1983  claims  against  the  other  State

defendants  should  be  dismissed  because  plaintiff  has  failed  to

allege  personal  participation  in  a  specific  constitutional

violation.

Similarly,  while  CCS  may  be  considered  as  acting  under

color  of  state  law  for  purposes  of  §  1983,[6]  it  may  not  be  held

liable  based  upon  respondeat  superior  –  that  is,  solely  because

it  employs  a  tortfeasor.    See  Green v Denning,  465  Fed.Appx.

804,  806  (10th  Cir.  3/9/2012)(applying  principle  to  prison  health

contractor);  Dubbs v. Head Start, Inc.,  336  F.3d  1194,  1216  (10th

Cir.  2003)  cert. denied,  540  U.S.  1179  (2004)(recognizing  that

many  courts  have  applied  this  doctrine  to  private  §  1983

defendants).    In  order  to  establish  the  plausible  liability  of

CCS  under  §  1983,  there  must  be  allegations  that  its  policies

caused  a  constitutional  violation.    Revilla v. Glanz,  8

F.Supp.3d  1336,  1340-41  (N.D.Okla.  2014)(applying  rule,  but

expressing  reservations);  Livingston v. Correct Care Solutions,

2008  WL  1808340  *1-2  (D.Kan.  4/17/2008);  Alvarez-Florez  v.

---

[6] See West, 487 U.S. at 54-57.

Shelton, 2007 WL 2461619 *1 (D.Kan. 8/23/2007).  There are no such allegations in the amended complaint.  Accordingly, plaintiff's § 1983 claim against CCS should be dismissed.

VI.  PLAINTIFF'S CLAIMS AGAINST THE KANSAS DEPARTMENT OF CORRECTIONS AND THE INDIVIDUAL STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED.

Plaintiff indicates in his complaint that he is suing individual defendants in their "official capacities."  Doc. No. 33 at p. 34.  Absent waiver, the Eleventh Amendment to the Constitution bars suits against state officers in their official capacities for money damages.  Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998).  Eleventh Amendment immunity applies as well to state agencies, such as the Kansas Department of Corrections.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Therefore, plaintiff's damages claims against individual State defendants in their official capacities and the Kansas Department of Corrections should be dismissed.

VII. PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE EIGHTH AMENDMENT CLAIM AS TO WORKING CONDITIONS OR MEDICAL CARE AGAINST ANY DEFENDANT.

A. Working conditions

In general, a prisoner may demonstrate a violation of the Eighth Amendment with respect to conditions of confinement if he shows that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter,

22

sanitation, medical care, or personal safety.  <u>Farmer</u>, 511 U.S. at 832 & 834 (1994).  As stated before, the prisoner must show that the deprivation was sufficiently serious that the conditions posed a substantial risk of serious harm and that the defendants acted with deliberate indifference, i.e., that the prison officials knew of or disregarded a substantial risk of serious harm by failing to take reasonable measures to abate it. <u>Id.</u> at 847.

The court shall assume for the purposes of this order that plaintiff has plausibly alleged that he was assigned to work under conditions which posed a substantial risk of serious harm. The court concludes, however, that plaintiff has not plausibly alleged that the State defendants or the ID defendants knew of or disregarded a substantial risk of serious harm by failing to take reasonable measures to abate it.

The Tenth Circuit has observed:

> The Eighth Amendment generally does not constitutionally embrace workplace safety regulations. <u>French v. Owens</u>, 777 F.2d 1250, 1257 (7th Cir. 1985). A lack of workplace safety policies or training does not necessarily establish deliberate indifference. <u>Stephens v. Johnson</u>, 83 F.3d 198, 200-01 (8th Cir. 1996).

<u>Franklin v. Kansas Dept. of Corrections</u>, 160 Fed.Appx. 730, 736 (10th Cir. 12/23/2005) <u>cert. denied</u>, 549 U.S. 1219 (2007).  In <u>Franklin</u>, the court concluded that the failure to inform and

train inmates on using proper lifting techniques did not rise above the level of negligence.  Other courts have also held that the failure to provide safety equipment or training did not constitute deliberate indifference to a risk of serious harm. See <u>Stephens v. Johnson</u>, 83 F.3d 198, 200-01 (8th Cir. 1996)(failure to provide steel-toed boots, safety equipment and safe working conditions); <u>Warren v. Missouri</u>, 995 F.2d 130, 131 (8th Cir. 1993)(failure to provide protective equipment on a table saw despite knowledge of past injuries); <u>Brent v. McQuiggin</u>, 2010 WL 3720010 *4 (W.D.Mich. 9/17/2010)(failure to give training and protective gloves for using slicing machine); <u>Brown v. Richmond County Correctional Inst.</u>, 2006 WL 1431488 *2 (S.D.Ga. 2006)(failure to provide helmet for limb cutting duty); <u>Arnold v. South Carolina Dept. of Corrections</u>, 843 F.Supp. 110, 113 (D.S.C. 1994)(failure to repair faulty steam pot, despite knowledge of faults); <u>Lee v. Sikes</u>, 870 F.Supp. 1096, 1099 (S.D.Ga. 1994)(failure to train regarding dangers from hogs on prison hog farm operation); but cf., <u>Smith v. Peters</u>, 631 F.3d 418, 420-21 (7th Cir. 2011)(forcing inmates to do stump removal work in freezing weather without protective gear or gloves states a deliberate indifference claim); <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995)(permitting claim where inmates were assigned to clean attic known to contain asbestos with masks that warned they were inadequate for use with asbestos);

Williams v. Berry, 2013 WL 6237866 *2 (N.D.Ind. 11/27/2003)(allowing an 8th Amendment claim involving a table with a jagged and sharp edge); Marvel v. Prison Industries, Inc., 2000 WL 1239962 *4 (D.Del 8/24/2000)(permitting claim based on exposure to paint primer in inadequately ventilated area where repeated requests of safety equipment were refused).

According to the amended complaint, plaintiff was given a respirator, albeit a used and dirty one. He also had gloves and eye protection. And, he received some instruction to use them. Doc. No. 33-1 at 42-43. The MSDS was present at the work site and plaintiff eventually read it, but defendants did not bring it to his attention. Id. at 130. There is no claim that any defendant was aware that other employees had suffered harms of the type plaintiff has alleged prior to plaintiff's complaint. Plaintiff first complained about the work conditions causing headaches and other health issues on September 14, 2011. He was "laid in" from work "to prevent further injury and assess [his] condition" either on September 15 or September 16, 2011 when plaintiff continued to raise health complaints. Id. at 40 and 47-48. Under these circumstances where steps were taken to abate the risk from Safety-Kleen, the court finds that plaintiff has failed to plausibly assert facts which would permit a conclusion that defendants were deliberately indifferent to a substantial risk of harm to plaintiff.

B. Denial or delay of medical attention

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). This can result from intentionally denying or delaying access to medical care. Id. at 104-05. But, proof of inadvertence or negligence is not sufficient to establish a valid claim. Id. at 105-06. Plaintiff must show the defendants knew plaintiff "faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'" Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting Farmer, 511 U.S. at 847). A disagreement between an inmate and medical personnel over the course of treatment does not give rise to a deliberate indifference claim. Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010). Furthermore, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)(quoting Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001)). "The substantial harm requirement can 'be satisfied by lifelong handicap, permanent loss or considerable pain.'" Id. (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff's amended complaint and attached materials indicate that plaintiff developed headaches, nausea and vomiting from the inhalation of Safety-Kleen. Plaintiff alleges that he complained to defendant Johnson on September 14, 2011, but he was not allowed by ID defendants to leave work to go to the medical clinic. Doc. No. 33, p. 29. Defendant Skinner told plaintiff on September 16, 2011 that he would be sent to see an outside doctor. Id. Plaintiff decided himself not to go to the prison medical clinic until September 19, 2011 when he made a health care request to CCS. Id. Plaintiff has alleged in a grievance that is an exhibit to the amended complaint that at the prison clinic defendant "Nurse Cindy" told him she knew nothing about plaintiff going to an outside doctor or a worker's compensation claim. Doc. No. 33-1, p. 48. Beyond the broadly stated claim that "Nurse Cindy refused medical treatment" (Doc. No. 33, p. 4), this is the only specific allegation regarding defendant "Nurse Cindy" or any State defendant providing or refusing to provide medical care. Plaintiff alleges that he was sent back to his ID supervisors without any treatment and that "[t]his continued for a period of over 90 days." Id. at 12. Plaintiff has alleged that defendant Skinner told him he had to speak to an investigator before he received medical treatment (Doc. No. 33-1, p. 48) and that defendant Skinner filed a worker's compensation claim. Doc. No. 33, p. 29. The worker's

27

compensation carrier concluded in a letter dated December 20, 2011 that there was "no evidence" to support a claim that plaintiff suffered an injury from exposure to cleaning solvent. Id. at 138. Plaintiff asserts that this is because he never received any medical treatment or a medical evaluation. Doc. No. 33, pp. 12-13. On December 23, 2011, plaintiff submitted a heath care request stating that he was still having headaches and that he had waited patiently for 90 days for ID to send plaintiff to a doctor. Doc. No. 33-1, p. 16. Plaintiff has documented that since making this health care request, he has received Tylenol and Excedrin from prison health clinics over a period of months or years.

Plaintiff asserts that acetaminophen may cause him liver damage given plaintiff's history of hepatitis-C. But, plaintiff does not describe any damages or ill health effects caused from acetaminophen. Nor does he allege that there was a different treatment for his headaches and other symptoms which was unreasonably denied.

Under these circumstances, the court concludes that plaintiff has failed to plausibly allege that defendants disregarded a substantial risk to plaintiff's health. After September 16, 2011, plaintiff was no longer exposed to Safety-Kleen, the source of plaintiff's alleged ailments. Plaintiff does not allege that the ID defendants denied him access to the

prison health clinic except while he was at work on the days of September 14, 15 and 16, 2011. He does not allege that a State defendant denied him treatment other than "Nurse Cindy" on September 19 or 20, 2011. He eventually received frequent treatments over the years in the form of headache pain relievers. The court finds that plaintiff's allegations that he was denied medical treatment for severe headaches for one day or parts of a few days by the defendants he has named in the amended complaint are not sufficient to state a claim of deliberate indifference to a serious medical need. Plaintiff also does not allege that the prescription of acetaminophen products has damaged him, that it rises above the level of negligence, or that he has something more than a disagreement regarding the course of treatment. In sum, under these circumstances the court finds that plaintiff has failed to state an Eighth Amendment violation for failure to provide medical care.

VIII. ONE OF PLAINTIFF'S RETALIATION CLAIMS FAILS TO STATE A PLAUSIBLE VIOLATION OF THE FIRST AMENDMENT.

Plaintiff asserts that he suffered the following retaliatory acts because he filed or threatened to file grievances regarding his treatment and conditions at the prison: 1) he was laid off his job with ID; 2) an ID supervisor attempted to solicit inmates to injure plaintiff; 3) defendant

Noble filed a disciplinary report based upon a false urinalysis test; 4) the Kansas Department of Corrections suspended his phone privileges without due process; 5) he was transferred to a supermax prison on the basis of a false report; and 6) he was denied medical treatment.

To prove a First Amendment retaliation claim, plaintiff must establish: 1) that plaintiff was engaged in constitutionally protected activity; 2) that the defendant caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) that the defendant's actions were substantially motivated by plaintiff's exercise of constitutionally protected conduct. Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007).

The court assumes that plaintiff engaged in constitutionally protected conduct when he filed various grievances relating to his treatment in prison. Gee, 627 F.3d at 1189. The court does not assume that each of the alleged retaliatory actions caused injuries which would chill an inmate of ordinary firmness from filing grievances. "[A]n inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." Strope v. Cummings, 381 Fed.Appx. 878, 883 (10th Cir. 6/9/2000). "'[P]risoners are expected to endure more than the average

citizen.'" <u>Siggers-El v. Barlow</u>, 412 F.3d 693, 701 (6th Cir. 2005); see also, <u>Poole v. County of Otero</u>, 271 F.3d 955, 961 (10th Cir. 2001) <u>abrogated on other grds</u>, 547 U.S. 250 (2006)("prisoners may be required to tolerate more than [other citizens] . . . before a [retaliatory] action taken against them is considered adverse"). The court concludes here that the alleged effort to recruit inmates to injure plaintiff is not a retaliatory action under the law. Plaintiff does not allege that he was threatened with injury by a defendant. He only alleges that he learned of an effort to injure him which did not come off. This is not an action by a defendant which would chill an inmate of ordinary firmness from filing a grievance.

As the court has previously explained, this claim and plaintiff's other retaliation claims are subject to dismissal because of statute of limitations problems, the failure to allege personal participation, or (as to the ID defendants) the absence of state action. In addition, plaintiff's amended complaint fails to plausibly allege that the prison transfer which occurred in May 2012 and the loss of phone privileges which occurred in March 2012 were substantially motivated by plaintiff's filing of grievances in September or October 2011. A claim of retaliation may be dismissed when there is no temporal proximity and no other suspicious circumstances upon which to base a finding of retaliatory motive. See <u>Anderson v.</u>

Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999)(three-month period of time standing alone is insufficient in employment discrimination cases); Connor v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997)(four-month period insufficient in employment discrimination case).

IX. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A FOURTEENTH AMENDMENT DUE PROCESS CLAIM FOR THE LOSS OF PHONE PRIVILEGES.

Plaintiff asserts that his due process rights were violated when he was deprived of phone privileges for six months without a hearing or appropriate due process.  The materials submitted with the amended complaint indicate that plaintiff was punished for allegedly using another inmate's PIN number.  Doc. No. 33-1, p. 102.  Plaintiff's allegations fall short of alleging an "atypical and significant hardship" which would trigger a procedural due process claim.

In Meek v. Jordan, 534 Fed.Appx. 762, 765 (10th Cir. 8/20/2013), the court stated that when an inmate is "being punished for misconduct, a liberty interest exists only when the penalty lengthens the confinement or involves an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Quoting, Sandin v. Conner, 515 U.S. 472, 484 (1995).  The loss of phone privileges has not been considered an "atypical and significant hardship" by many other courts.  See Alexander v. Ebbert, 2015 WL 3862708 *1 (M.D.Pa.

32

6/8/2015)(20 days disciplinary segregation and six months loss of visiting and phone privileges); Parks v. Anderson, 2014 WL 4854570 *34 (E.D.Ky. 9/29/2014)(citing six cases involving loss of phone privileges and other allowances); Barbati v. Bureau of Prisons, 2012 WL 4119300 *6 (S.D.W.Va. 8/22/2012)(same).  The court shall follow that authority here.

X.  PLAINTIFF'S OTHER CLAIMS LACK A LEGAL FOUNDATION.

As mentioned previously, the amended complaint broadly asserts claims under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the Constitution.  Doc. No. 33, pp. 56-63.  Aside from plaintiff's claims of retaliation for filing prison grievances, plaintiff has not alleged a First Amendment claim that his right to freedom of speech, press, religion or the right to assemble and petition for a redress of grievances has been violated.  As for the Fourth Amendment, plaintiff has not alleged that his person has been illegally searched or seized.  Also, plaintiff has not asserted a right under the Fourth Amendment relating to his prison conditions or medical care which goes beyond the protections offered by the Eighth Amendment.  In sum, he has not alleged a plausible and independent claim for the violation of the Fourth Amendment.

Plaintiff has not alleged a deprivation of life, liberty or property without due process in violation of the Fifth Amendment because the Fifth Amendment concerns due process violations by

the federal government. Martina-Rivera v. Sanchez Ramos, 498
F.3d 3, 8 (1st Cir. 2007); Smith v. Kitchen, 156 F.3d 1025, 1027-
28 (10th Cir. 1997).   The amended complaint does not allege a
violation of his criminal trial rights as guaranteed by the
Sixth Amendment.   Nor has plaintiff alleged a violation of the
Ninth Amendment.   See Parnisi v. Colorado State Hosp., 1993 WL
118860 *1 (10th Cir. 4/15/1993)(rejecting Ninth Amendment claim
alleging the denial of medical treatment to a prisoner).
Plaintiff also has failed to assert facts which plausibly
support a Fourteenth Amendment equal protection or due process
claim other than as already addressed in this decision.   In
closing, the court notes that in general references to
violations of state laws and regulations, as contained in the
amended complaint, do not offer a basis for a § 1983 action.
See Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002).

XI.   CONCLUSION

       For the above-stated reasons, the court concludes that
plaintiff's amended complaint fails to state a claim.
Therefore, the court shall direct that this case be dismissed
without prejudice.   This action renders moot plaintiff's motion
for service of summons (Doc. No. 38).

**IT IS SO ORDERED.**

Dated this 28th day of September, 2015, at Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge